J-A20017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PHILIPS MEDICAL CAPITAL, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYNAMIC HEALTHCARE SERVICES, | : | |
| INC., DYNAMIC HEALTH CARE | : | |
| SERVICES, INC. | : | No. 330 EDA 2025 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIPS MEDICAL CAPITAL, LLC, | : | |
| DYNAMIC HEALTHCARE SERVICES, | : | |
| INC. | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIPS RS NORTH AMERICA, LLC | : | |
| F/K/A RESPIRONICS, INC. | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered December 26, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-07746-CT

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:      **FILED DECEMBER 1, 2025**

Philips RS North America, LLC f/k/a Respironics, Inc. ("Philips RS")

appeals from the order that overruled its preliminary objection to Dynamic

_____

[*] Retired Senior Judge assigned to the Superior Court.

Healthcare Services, Inc.'s ("DHS") second amended joinder complaint seeking to compel arbitration. We affirm.

Philips RS is a medical device manufacturer that develops respiratory devices. DHS is a medical device supplier to end-user patients. DHS began purchasing breathing devices from Philips RS in 2015 pursuant to a Sleep and Home Respiratory Purchase Agreement ("SHRPA"). The SHRPA between DHS and Philips RS contained an arbitration clause, which stated:

> Any controversy or claims arising out of or relating to this Agreement shall be settled by arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Rules and Procedures of the American Arbitration Association and the substantive laws of the Commonwealth of Pennsylvania without giving effect to principles of conflicts of laws.

SHRPA, at ¶ N.

DHS financed the purchases of the devices through Philips Medical Capital LLC ("PMC"), which is the financing arm of Philips RS. After DHS purchased the devices, DHS entered into separate financing agreements with PMC through a Master Lease Agreement ("MLA"). DHS would then provide the devices to end-user patients, using payments from the patients' insurance carriers to pay the monthly payments to PMC. Philips RS was not a party to the MLA.

In June 2021, Philips RS instituted several recalls for certain models of its devices because of alleged hazardous material. At the time, DHS had 10 active finance agreements with PMC for the purchase of Philips RS breathing devices. These agreements were subject to the MLA. Because of the recall,

certain models of the breathing devices were unmarketable, which precluded DHS from providing them to end-user patients in exchange for payments from their insurance carriers. As a result, DHS was unable to make its monthly payments to PMC.

After negotiations between DHS and PMC failed, PMC instituted the instant collection action against DHS in September 2022 (the "PMC Collection Action"). PMC alleged that DHS was in default for failing to make payments under the financing agreements.

DHS filed counterclaims against PMC and a third-party joinder complaint against Philips RS. In its third-party joinder complaint against Philips RS, DHS asserted six claims: fraudulent misrepresentation; fraud by omission; negligent misrepresentation; tortious interference; civil conspiracy; and violation of the Unfair Trade Practices and Consumer Protection Law. DHS claimed that Philips RS conspired with PMC to engage in unlawful trade practices by defrauding DHS into becoming legally committed to pay for medical devices that PMC and Philips RS purportedly knew were defective. DHS sought a judgment holding Philips RS solely liable for all damages asserted in PMC's complaint, or a judgment declaring that Philips RS is liable to DHS for common law indemnification for any judgment entered against DHS. DHS did not assert a breach of contract claim against Philps RS under the SHRPA.

Philips RS filed a preliminary objection to DHS's joinder complaint seeking to compel DHS to arbitrate its claims against Philips RS pursuant to

the arbitration clause in the SHRPA. The trial court overruled Philips RS's preliminary objection seeking to compel arbitration. It explained:

> [Philips RS] notes that [DHS] purchased the devices at issue from [Philips RS] pursuant to a Sleep and Home Respiratory Purchase Agreement (SHRPA) which includes an arbitration clause. Therefore, according to [Philips RS], the claims in the Second Amended Joinder Complaint must be sent to arbitration. However, there are other entities involved in this dispute that were not parties to the SHRPA. **See**; **School District of Philadelphia v. Livingston-Rosenwinkel, P.C.**, 690 A.2d 1321 (Cmwlth.Ct. 1997) [("**Livingston**")] (defendant's right to join additional defendant pursuant to Pa.R.Civ.P. 2252 controlled over arbitration provision between defendant and additional defendant).

Trial Court Memorandum, 12/26/24, at 2.

Philips RS filed the instant appeal. We have jurisdiction, even though the order was interlocutory, because an order denying a motion to compel arbitration is appealable as of right. **See** Pa.R.A.P. 311(a)(8); 42 Pa.C.S.A. § 7321.29(a)(1). Philips RS raises the following issues:

1. Did the Trial Court err by overruling Philips RS's preliminary objection when the parties' contract contains a valid, unambiguous arbitration requirement and when DHS's claims are within the scope of the arbitration clause?

2. Did the Trial Court err by overruling Philips RS's preliminary objection because Philips RS is a third-party defendant rather than a direct defendant despite that DHS has asserted in a separate proceeding parallel claims involving the same Devices against Philips RS as a direct defendant in derogation of the same arbitration clause?

Philips RS's Br. at 5.

- 4 -

We address Philips RS's issues together as they challenge the order overruling its preliminary objection. Philips RS argues that DHS's claims against it fall squarely within the broad scope of the arbitration clause in the SHRPA, requiring dismissal of the second amended joinder complaint without prejudice so the parties can proceed to arbitration. *Id.* at 1. Philips RS asserts that "[b]ecause DHS's claims all arise out of or relate to [d]evices purchased pursuant to the SHRPA, all of DHS's claims fall within the arbitration clause." *Id.* at 15. Philips RS notes that DHS did not assert a breach of contract claim against Philips RS under the SHRPA even though the SHRPA governs the parties' rights and obligations. *Id.* at 10. Philips RS also points out that DHS has never disputed that the SHRPA contained an arbitration agreement. *Id.* at 11.

Philips RS further asserts that the trial court was required to analyze whether DHS's claims fell within the scope of the arbitration agreement and erred in relying solely on *Livingston* in finding that since there is another entity involved in this dispute that was not a party to the SHRPA, arbitration was not proper. *Id.* Philips RS contends that the court's reliance on *Livingston* was error for three reasons:

> First, the Pennsylvania Supreme Court questioned *Livingston*'s reasoning in *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016), undermining both *Livingston*'s policy concerns and its reliance on Pennsylvania Rule of Civil Procedure 2252. Second, even if *Livingston* has continuing vitality, *Livingston* is not controlling where, as here, enforcement of the arbitration agreement is consistent with the objectives of alternative dispute resolution, especially when DHS agreed in the MLA

that its payment obligation was "unconditional and absolute" and not subject to any defense. Finally, **Livingston** is inapplicable when, as here, there is only one rather than multiple joined parties.

*Id.* at 16-17.

Philips RS further emphasizes that the "PMC Collection Action, on the one hand, and DHS's claims against Philips RS, on the other, involve distinct liability and damages issues that do not overlap." *Id.* at 20. In Philips RS's view, "DHS's contractual liability to PMC centers on a solitary issue: whether DHS paid what it owes under the MLA and leases for the [d]evices" and "[j]oining Philips RS into the PMC Collection Action defeats the streamlined contractual issue central to any payment default by DHS, prejudicing PMC just as PMC has argued . . . and evades DHS's separate contractual obligation to arbitrate." *Id.* at 20-21.

Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is well-settled:

> Our review is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.
>
> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary.

*Fineman, Krekstein & Harris, P.C. v. Perr*, 278 A.3d 385, 389 (Pa.Super. 2022) (cleaned up).

The facts of this case are very similar to the facts in *Livingston*, in which the Pennsylvania Commonwealth Court held that a joinder defendant is precluded from enforcing an arbitration agreement between it and the original defendant if the plaintiff was not a party to the arbitration agreement. 690 A.2d at 1323. There, a school district contracted with an architectural corporation for the construction of a new school building. *Id.* at 1321. The architectural corporation then subcontracted with an engineer for plumbing and mechanical concerns for the project. *Id.* The agreement between the architectural corporation and the engineer contained an arbitration clause. *Id.* at 1321-22. After construction of the school was completed, the school district filed a civil complaint against the architectural corporation for alleged design deficiencies. *Id.* at 1322. The architectural corporation, in turn, filed a joinder complaint against the engineer and other subcontractors. *Id.* The joinder complaint alleged that the engineer and other subcontractors were "solely liable to the [s]chool [d]istrict, or jointly liable with [the architectural corporation] to the [s]chool [d]istrict, or liable over to [the architectural corporation] for indemnity or contribution on the [s]chool [d]istrict's cause of action." *Id.* The engineer filed preliminary objections to the architectural corporation's joinder complaint asserting that the parties were bound to arbitration due to the arbitration clause in their agreement. *Id.* The trial court overruled the engineer's objection, and the engineer appealed. *Id.*

The Commonwealth Court affirmed the trial court's order overruling the engineer's objection. It concluded that "the arbitration clause here is not enforceable because the underlying dispute involves entities which were not parties to the [a]greement between [the architectural corporation] and [the engineer] and because enforcement of the arbitration provision would frustrate the public policy interest in efficient dispute resolution." *Id.* The Court pointed out that the school district, as plaintiff, selected the forum in which the matter would be resolve, and "in this chosen forum, actions are governed by the Pennsylvania Rules of Civil Procedure," including Pennsylvania Rule of Civil Procedure 2252, which permits the joinder of additional defendants.[1] *Id.* at 1323. The Court found that the architectural corporation had the right under Rule 2252 to join the engineer because it alleged that the engineer was liable to the school district. *Id.* The Court found that "[b]ecause Rule 2252 includes no exception for arbitration that would limit this right, [the engineer] cannot compel arbitration in place of joinder here." *Id.*

The *Livingston* Court further opined that "if this case were restricted to a dispute between [the architectural corporation] and [the engineer] with respect to the interpretation of their [a]greement, arbitration certainly would

---

[1] Rule 2252 provides, in relevant part, "any party may join as an additional defendant any person not a party to the action who may be . . . solely liable on the underlying cause of action against the joining party" or "liable over on the underlying cause of action against the joining party or jointly and severally liable with the joining party." Pa.R.Civ.P. 2252(a).

be proper." *Id.* "However, it is evident that the dispute here includes parties other than [the architectural corporation] and [the engineer] and includes issues that extend beyond interpretation of the [a]greement's terms." *Id.* The Court noted that "enforcement of an arbitration provision where, as here, the underlying dispute includes parties not subject to the arbitration process, would frustrate rather than foster the objectives of alternate dispute resolution" and "would engender a protracted, piecemeal disposition of the dispute." *Id.*

Subsequently, this Court held in *Taylor* that "the prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims." 147 A.3d at 507. We reasoned that the policy of the Federal Arbitration Act favoring arbitration trumps concerns about judicial efficiency and requires enforcement of valid arbitration agreements. *Id.* at 510.

Notably, the *Taylor* Court did not expressly disagree with, or even mention, *Livingston*. Moreover, it dealt with the enforceability of arbitration agreements in the context of wrongful death and survival actions.

Here, like in *Livingston*, the underlying PMC Collection Action involves an entity that is not party to the arbitration agreement – PMC. Like the school district in *Livingston*, PMC, as plaintiff in this case, selected the forum in which the matter would be resolved. DHS properly joined Philips RS in the PMC Collection Action pursuant to Rule 2252. Philips RS is attempting to enforce an arbitration agreement on a non-signatory because of DHS's joinder

complaint. However, PMC was not a party to the SHRPA and thus did not consent to arbitration. Accordingly, we agree with the trial court that enforcing the arbitration clause in this case is not proper.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/1/2025